d1.    That defendant California Board of Corrections be ordered to comply with Penal Code §§6031.1 and 6031.1(c).

5.    That if a satisfactory plan cannot be submitted and implemented, the defendants be enjoined and restrained from incarcerating or detaining any and all prisoners in the Jail and further enjoined from transferring prisoners to an alternative facility unless defendants can provide evidence satisfactory to the Court that the alternative does not suffer from the conditions herein complained of and that it is accessible to visitors and counsel.

6.    That the Court retain jurisdiction over defendants until such time that the Court is satisfied that the practices, policies, acts and omissions alleged herein no longer exist and will not reoccur.

7.    That the Court award reasonable attorneys' fees, investigator fees, paralegal fees and costs of suit herein to plaintiffs.

8.    That the Court award other such relief as may be necessary  and proper.

For the foregoing reasons, and for those reasons which will be argued by plaintiffs at time of hearing on this Motion, plaintiffs would urge the court to deny defendants' Motions to Dismiss, Motion to Strike and Motion to Compel Further Statement of Claim.

Dated: _____         Respectfully submitted, YOUR NAME AND ADDRESS HERE

---

**UNITED STATES DISTRICT COURT**
_____ **DISTRICT OF CALIFORNIA**

*CV 08    3078 (PR)*

*MHP*

*FILED*

JUN 2 5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Edgar Lee WARReN          ,)
                    **Plaintiffs,** )
                              )
                              )
                              )
GOVERNOR ARNOLD  **vs.**     )
SCHARZENEGGER              )
Butte County Jail          )
                    **Defendants.** )
                              )

**PLAINTIFFS' REPLY AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION TO COMPEL FURTHER STATEMENT OF CLAIM**

*E-filing*

**TO:**  The defendants herein, and their attorney of record COME NOW THE PLAINTIFFS who submit the following Reply and Opposition to the Motion to Dismiss, Motion to Strike and Motion to Compel Further Statement of Claim filed herein by the defendants.

Dated: June 16-2008

**Respectfully submitted,**

_____

Attorney for Plaintiffs

Edgar Lee WARReN

*Page-1-*

1  Edgar Lee WARREN                    OFFICE OF The CLERK, U.S.
2  35 COUNTY CenteR DR.                 DiStRiCt COURt NORtHERN
3  OROVille, CA 95965                   DiStRiCt OF CaliFORNia
4                                        450 GOLDEN GHtE AVENUE
5                                        San FRANCISCO, CaliFORNia
6                                                        94102
7
8   Federal court Edgar Lee WARReN is A black man
9   American here in united states and some
10  MENtaL issues and MR.WARReN can not Read
11  ARe WRite however WARREN is asking The
12  FederAL COURt TO APPOINtMENt COUNSEL on
13  his COMPLAIN UNDER The civil Rights Act,
14  Titl 42. U.S.C § 1983# and ON This LAWSUit
15  here however see DOCUMENt's ON MR.WARREN
16  MENtaL issues and about his Read and WRite
17  Regional center OF BAKERSFeild OF
18  CaliFORNia Edgar Lee WARReN service
19  coordiNator WORKEN Phone, number
20  (661) 327-8531# Regional center
21  FOR The mentalLY RetaRded and
22  Mental PRObLems IS FOR Edgar Lee WARREN
23  they have his FiLe there. ask FOR WARReN
24  service coordinator WoRKen there
25  iF neeed it and so on and so on
26  UNDER The Law Edgar Lee WARReN been
27  DESCRIMINAtion about his constitutional
28  Rights UNDER The 8th, 9th, OF united states

Page 2

1   contitution however EdgaR Lee WARREN
2   have The Right To The EQUAL PROtEction
3   of The Laws of The united states
4   Contitution of The 8th, 9th, 14th
5   Amendments of U.S. contitution and
6   that UNDER The Law and by Law and so
7   oN and so oN. Thank you FOR Your time

9   Signature: Edgar Lee Warren

11  DAte June-16-2008

52.     Pretrial detainees are presumable innocent and for the most part are confined in lieu of bail, which they are too poor to afford to ensure their attendance at trial. Yet defendants inflict upon these prisoners conditions, restrictions and constraints which individually and in the aggregate constitute summary punishment without even a semblance of due process of law in contravention of 42 U.S.C. §1983 and the Fifty and Fourteenth Amendments to the United States Constitution.

## SECOND CLAIM FOR RELIEF:  DENIAL TO PRE-TRIAL PRISONERS OF EQUAL PROTECTION OF LAW.

53.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 50, inclusive.

54.     Most pretrial prisoners are detained only because they are financially unable to post bail.   By contrast, wealthier persons awaiting trial who can afford to post bail are not incarcerated or subjected to the conditions which these plaintiffs experience. Wealthier persons have, inter alia, unrestricted access to counsel; the opportunity to do legal research and to contact witnesses; the opportunity to obtain proper rest and nutrition and to maintain their physical and emotional health so that they can effective assist in preparation of their trials and appear as effective witnesses for themselves.  Defendants have denied and will continue to deny all these rights to pretrial prisoners solely because of their poverty.

55.     Defendants, by committing these acts, omissions and practices complained of in this claim for relief are depriving pretrial prisoners of equal protection of the laws in violation of 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution.

## THIRD CLAIM FOR RELIEF:  PREJUDICE TO A FAIR TRIAL.

56.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 50, inclusive.

57.     The physically and psychologically oppressive conditions at the Jail impair unconvicted prisoners' mental and physical health so that they cannot be effective witnesses for themselves or assist in preparing their defenses, and upon plaintiffs' information and belief, cause many unconvicted prisoners to plead guilty to avoid further confinement in the Jail.

58.     The conditions to which presumably innocent prisoners awaiting trial are subjected in the Jail, as well as the restrictions placed on their access to counsel and to the courts undermine the integrity of the entire trial process and infringe on unconvicted prisoners's rights to a fair trial thereby depriving these prisoners of rights guaranteed them by 42 U.S.C. §1983 and the Fifth, Sixth, Seventh, and Fourteenth Amendments to the Constitution of the United States.

## FOURTH CLAIM FOR RELIEF:  DENIAL OF ACCESS TO COUNSEL AND TO THE COURTS.

59.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 24, inclusive, and 28.

60.     Defendants restrict prisoners' access to courts and to counsel and to the effective assistance of counsel by, among other thing:

(a)     Reading prisoner-attorney mail;

(b)     Reading and delaying prisoner mail to and from courts;

 Page 4

(c)    Failing to provide private attorney-prisoner interviews by a failure to provide adequate private space for attorney-client interviews;

(d)    As a form of arbitrary discipline, the defendants refuse to permit prisoners phone calls to attorneys, investigators, and witnesses.

61.    Defendants further deny pretrial prisoners access to the courts and their rights to assist counsel in preparing a defense by making it impossible for prisoners to prepare legal documents or assist counsel in legal research to inaccessibility of law books or to locate and prepare witnesses due to the restrictions on communications.

62.    Defendants' actions, practices, policies and omissions in restricting and/or denying prisoners their constitutionally protected rights of access to the courts and to counsel and to petition for the redress of grievances deprive plaintiffs of rights secure them by 42 U.S.C. §1983 and the First, Fifty, Sixth and Fourteenth Amendments to the United States Constitution.

## FIFTH CLAIM FOR RELIEF: DENIAL OF RIGHTS OF EXPRESSION, COMMUNICATION, AND ASSOCIATION.

63.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 22, inclusive, and 24 and 26.

64.    Defendants censor the flow of communication to and from prisoners and effectively isolate prisoners from the outside world in contravention of plaintiffs' rights guaranteed them by 42 U.S.C. §1983 and the First, Fourth and Fourteenth Amendments to the United States Constitution.

## SIXTH CLAIM FOR RELIEF: DENIAL OF DUE PROCESS IN DISCIPLINARY AND ADMINISTRATIVE PROCEEDINGS.

65.    Plaintiffs incorporated by reference the allegations contained in paragraphs 1 through 50, inclusive.

66.    Defendants mete out discipline to all prisoners and in effect subject pretrial prisoners to punitive, high security classification in a capricious manner without the rudiments of fundamental fairness, namely prior notice of what constitutes a disciplinary infraction and what punishments attach, prior notice of and opportunity for a prompt hearing before an impartial tribunal at which hearing the accused may be represented by counsel or counsel substitute, confront adverse witnesses, and present favorable evidence, and a reasoned decision with findings based on the evidence. Defendants' failure to provide these protective procedures deny plaintiffs due process of law as guaranteed by 42 U.S.C. §1983 and the Fifth and Fourteenth Amendments of the United States Constitution.

## SEVENTH CLAIM FOR RELIEF: CRUEL AND UNUSUAL PUNISHMENT.

67.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 50, inclusive.

68.    The conditions, restrictions and constraints, individually and in the aggregate, suffered by prisoners at the hands of defendants constitute cruel and unusual punishment in contravention of plaintiffs' rights under 42 U.S.C. §1983 and the Eighth and Fourteenth Amendments to the United States Constitution.

## EIGHTH CLAIM FOR RELIEF:

## INADEQUATE MEDICAL CARE.

69.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 21, inclusive, and 25, 28, 29, and 31 through 36, inclusive.

70.    Defendants provide plaintiffs with inadequate superficial care in violation of plaintiffs' rights to due process of law secured to them by 42 U.S.C. §1983 and the Fifth and Fourteenth Amendments to the United States Constitution.

## NINTH CLAIM FOR RELIEF:
## VIOLATIONS OF CALIFORNIA LAW.

71.    Plaintiffs incorporate hereby by reference the allegations contained in paragraphs 1 through 50, inclusive.

72.    Defendants confiscate plaintiffs' personal property without providing a receipt in violation of California Penal Code §4003.

73.    Defendants fail to provide plaintiffs' care and treatment by a physician 24 hours per day and deny plaintiffs' treatment by their private physician in violation of California Penal Code §4023.

74.    Jail nurses are engaged in the unauthorized practice of medicine, in violation of California Business and Professions Code, §§2141, 2392, and 2726.

75.    Defendants fail to provide prisoners who are addicted to controlled substances with medical treatment necessary to ease the symptoms of withdrawal in violation of California Health and Safety Code §11222.

76.    The defendants fail to enforce, monitor and abide by the terms of California Administrative Code, Title 15, "Minimum Standards."

77.    Defendants fail in their duty pursuant to Penal Code §825 to bring newly incarcerated prisoners before a magistrate within two days.

78.    Defendants fail to segregate sentenced inmates and pretrial detainees in violation of Penal Code §4001.

79.    Defendants fail to remove prisoners who have contagious diseases from the general population of the Jail in violation of Penal Code §4012.

80.    Defendant members of the _____ County Board of Supervisors fail to provide the funds for adequate food for the prisoners in violation of Penal Code §4015.

81.    The defendant California Board of Corrections (Prison Terms) does not withhold reimbursement funds from _Butte_ County Jail pursuant to its statutory obligation under Penal Code §4016.5.

82.    The defendants do not keep records of all disciplinary infractions and punishments administered to prisoners in compliance with the requirements of Penal Code §4019.5(e).

83.    The defendants do not afford all prisoners in the Jail an opportunity to exercise religious freedom in compliance with Penal Code §4027.

84.    The defendant California Board of Corrections fails in its statutory duty pursuant to Penal Code §6029.1 to withhold funds from the County Jail Capital Expenditure Fund to compel utilization of the County of _Butte_ alternatives to incarceration.

85.    Defendant CALIFORNIA BOARD OF CORRECTIONS fails in its duty under Penal Code §6031.1 to conduct an objective, accurate and through inspection of the _____ County Jail to determine if it provides adequate recreational facilities, treatment services, and is in compliance with the California Minimum Standards (California Administrative Code, Title 15), nor does the defendant CALIFORNIA BOARD OF CORRECTIONS fulfil its duty under



Penal Code §6031.1(c) to accurately report to the California Legislature on conditions in the _Butte_ County Jail specifying those areas in which the Jail has failed to comply with the requirements of law.

## DECLARATORY JUDGEMENT

86.  An actual and substantial controversy exists between plaintiffs and defendants, in that plaintiffs complain that defendants are violating and will continue to violate their most fundamental rights under the United States Constitution and the laws and statutes of the United States and California and commit acts and omissions threatening plaintiffs' lives and health. Defendants have persisted in subjecting plaintiffs to unconstitutional and harmful conditions despite protests by the Jail's prisoners. Defendants may in the future make minor changes in the Jail from time to time in response to protests but they will do nothing substantial to remedy the unconstitutional and harmful conditions to which they subject plaintiffs or to change the policies and procedures. Defendants deny that their actions are illegal or unconstitutional or cause injuries to plaintiffs.

## INJUNCTIVE RELIEF

87.  All of the conditions and practices separately and in the aggregate make incarceration in the Jail severe, punitive and restrictive. The plaintiffs are now suffering and will continue to suffer irreparable injury as a direct and proximate result of the conditions and practices herein alleged and are without a plain, speedy, adequate remedy at law in that:

(a)  Money damages will not adequately compensate plaintiffs for denial of their Civil Rights or for time confined in the Jail pursuant to pretrial detention under conditions that could be successfully challenged in the Courts.

(b)  Plaintiffs are psychologically and physically harmed and damaged; and unconvicted prisoners are induced to plead guilty to criminal charges pending against them in order to avoid the conditions and practices herein described which exist at the Jail.

(c)  Money damages for plaintiffs' injuries are extremely difficult to calculate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

1.  That the Court certify this action as a class action.

2.  That the Court personally view the _Butte_ County Central Jail to gain assistance in rendering a ruling.

3.  That the Court enter a judgement declaring that defendants, and each of them, through the individual and collective acts, practices, and omissions complained of herein, have subjected and are subjecting plaintiffs to:

a.  Summary punishment without due process of law in contravention of 42 U.S.C. §1983 and the Fifth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' First Claim for Relief;

b.  Denial of equal protection of law in contravention of 42 U.S.C. §1983 ant the Fourteenth Amendment to the United States Constitution as enumerated in plaintiffs' Second Claim for Relief.

c.  Prejudice to fair trial in contravention of 42 U.S.C. §1983 and the Fifth, Sixth, Seventh and Fourteenth Amendments to the United States Constitution as enumerated in

plaintiffs' Third Claim for Relief;

      d.    Denial of access to counsel and the Courts in contravention of 42 U.S.C. §1983 and the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' Fourth Claim for Relief;

      e.    Denial of Rights of Expression, Communication and Association in contravention of 42 U.S.C. §1983 and the First, Fourth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' Fifth Claim to Relief;

      f.    Denial of due process in disciplinary and classification proceedings in contravention of 42 U.S.C. §1983 and the Fifth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' Sixth Claim for Relief;

      g.    Cruel and unusual punishment in contravention of 42 U.S.C. §1983 and the Eighth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' Seventh Claim for Relief;

      h.    Denials of adequate medical care in contravention of 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution as enumerated in plaintiffs' Eighth Claim for Relief;

      i.    Violations of California Penal Code §§825, 4001, 4003, 4012, 4015, 4016.5, 4019.5(e), 4023, 4027, 6029.1, 6031.1, 6031.1(c), Business and Professional Code §§2141, 2392 and 2726, Health and Safety Code §11222 as enumerated in plaintiffs' Ninth Claim for Relief;

      4.    That the Court issue preliminary and permanent injunctions assuring that pretrial prisoners are accorded all of the rights and privileges of the innocent; and that all prisoners not be subjected to cruel and unusual punishment and not denied their other constitutional and statutory rights. More specifically, the plaintiffs should be assured by the plan, inter alia:

      a.    That the prisoners be accorded essential preventive medical care and receive adequate and sound medical, psychiatric and dental health care;

      b.    That prisoners addicted to controlled substances be accorded with reasonable medical care to ease the symptoms of withdrawal and not be housed with other non-addicted inmates during their period of withdrawal.

      c.    That a regular recreational and exercise program, outside of the cells, be expanded and scheduled and that all prisoners be allowed outdoors for sufficient periods to insure their continuous physical and mental well being;

      d.    That the Jail and its prisoners living areas therein be kept in a safe and healthy condition, with proper heating, ventilation and provisions for sanitation;

      e.    That pretrial prisoners be accorded private and adequate living space in one man cells with reasonable lighting and furnishings;

      f.    That defendants be enjoined from placing pretrial and sentenced prisoners in overcrowded cells and from requiring some pretrial and sentenced prisoners to sleep on the floor.

      g.    That education and vocational work programs be established;

      h.    That the prisoners have continuous opportunity to talk and associate with each other, for legitimate purposes including but not limited to socializing;

      i.    That the prisoners be entitled to receive through the United States mail or from visitors and retain books, magazines, newspapers, law books and legal materials and be provided with direct access to an adequate reading and law library with supplies and equipment for prisoners' legal work.

## SECTION 1983 AND THE STRUGGLE FOR PRISONER'S RIGHTS

Although Section 1983 of Title 42 USC was enacted by the U.S. Congress over 100 years ago, it had very little effect until the 1960's. Section 1983 was originally known as the Federal Civil Rights Act of 1871. It was supposed to enable black people to have the new constitutional rights which they won after the Civil War enforced. The 13th, 14th, and 15th Amendments to the U.S. Constitution prohibits slavery, establishes the right to due process of law, and guarantees every male citizen the right to vote.

Some judges in the state courts refused to enforce these rights, especially when the rights were violated by other officials of state and local government. The U.S. Congress passed Section 1983 which permitted persons to sue in federal court whenever state or local officials failed to uphold the law. Yet, Federal judges continued to ignore this law, along with other civil rights bills that had been passed by Congress.

Although the purpose of Section 1983 was to bypass the state courts, federal judges usually ruled that lawsuits had to go back to those very state courts. Their rulings remained law until the civil rights movement. The key decision to eliminate the restrictions on Section 1983 came in 1961, in the case of Monroe v. Pape, 365 U.S. 167 (1961).

In 1964 the U.S. Supreme Court confirmed that a prisoner can use Section 1983 to sue state prison officials in federal court. Cooper v. Pate, 378 U.S. 546 (1964). Prisoners began to file more and more federal suits against prison abuses. A few cases were decided favorably on behalf of the petitioners, dealing mainly with freedom of religion, crude brutality and the prisoner's rights to take legal action without interference from prison staff. A significant contribution toward the education of prisoners regarding 42 USC, Sec. 1983 occurred in 1972 by way of the Jailhouse Lawyer's Manual, a publication of the Prison Law Collective in San Francisco on which this manual is based.

In 1991, the U. S. Supreme Court ruled that deliberate indifference must be shown to exist on the part of the Department of Corrections in order for the Court to rule in favor of the plaintiff(s). The current Court reflecting a more conservative group of judges, is handing down more and more decisions that diminish rights previously granted by a more liberal court.

### WHO CAN USE SECTION 1983?

Although Section 1983 was designed especially to help black people enforce the rights won after the civil war, anyone can use it, regardless of race. The person need not be a citizen. Civil death laws, which take away or limit a prisoner's right to use state courts for personal suits, do not affect the right to sue in the federal courts on the basic of 42 USC, Section 1983.

### WHAT IS COVERED?

The action(s) mentioned in the suit must constitute a violation of federal rights regarding conditions or treatment in jail, prison, or at the hands of law enforcement, and they must have been using their power from the state or local government. Someone acting under "color of authority" (anyone whose salary is paid with tax money) must violate federally protected constitutional rights.

### RELIEF THAT CAN BE REQUESTED?

Monetary damages can be requested. A declaratory judgement can be requested in that the court issue a finding that the rights of the prisoner were violated, and/or injunctive relief, in which the court orders the offending prison officials to desist in that which is the subject of the complaint.

### REQUIRED LEGAL PAPERS

The basic papers for starting any federal suit are a summons and complaint. An affidavit presenting legal arguments can also be submitted.

### SUMMONS AND COMPLAINT:

To begin, a copy of the complaint, usually the most significant document in the suit, is mailed to the U. W. District Court. It is important to complete the complaint to the satisfaction of the court, stating the name of the one bring suit, (plaintiff(s)), those against whom the suit is being brought (defendants), what occurred, what the plaintiffs want the court to do (relief). In addition, those laws that give the court the power to rule on the particular suit (the court's "jurisdiction") are to be stated. If the complaint does not meet all the requirements the suit may be dismissed at the start. The plaintiff has the right, though, to amend the complaint at least once before an answer is submitted by the defendants. To amend the complaint, after it has been submitted, follow the same form a the original complaint, indicating that it is an "Amended Complaint." The amended complaint can not deviate from the original in regard to what has occurred. An amended complaint may name additional defendants, request somewhat different relief, add or drop a plaintiff, or change the statement which lists the



Page 9

from the federal court if it is preferred that their form be used. Each prisoner who is a plaintiff on the complaint must submit a separate affidavit showing that he or she is too poor to pay court costs.

## REQUEST FOR APPOINTMENT OF COUNSEL:

The in forma pauperis law, 28 USC, Sec. 1915(d), allows a U.S. District Judge to "request an attorney to represent any such person unable to employ counsel." On the basis of this law, district judges frequently have appointed lawyers for prisoners who filed section 1983 suit on their own behalf. In Almond v. Kent, 459 F. 2d 200, 204 (4th Cir. 1972), a U.S. Court of Appeals ordered a district judge to appoint counsel for a prisoner in a section 1983 suit after the district judge had refused to do so. In Hudson v. Hardy, 412 F. 2d 1091, 1095, (D.C. Cir 1968), another Court of Appeals said that it is the district court's "plain duty to appoint counsel" to help defend a motion for summary judgment "when necessary to insure that an indigent prisoner's allegations receive fair consideration." Most judges have ruled that section 1915(d) does not authorize the court to pay a lawyer for his work in a section 1983 suit. In Jordan v. Fitzharris, 257 F. Supp. 674 (N.D. Cal. 1966), however, the court not only appointed a lawyer for a prisoner, but also included the lawyer's "necessary expenses " of handling the case as part of the "costs" of the suit which had to be paid by the party that lost the suit; in that case, the Warden of Soledad Prison in California. In Newman v. Alabama, 349 F. Supp 278, 286 (M. D. Ala. 1972), the court ordered the defendants, prison officials, to pay $2,483 for expenses (including a deposition and photocopying) and $12,000 attorney's fees. 42 USC, Sec. 1988 is a provision which will allow an attorney to collect fees. Because there are instances of decisions in which large sums of fees were granted to attorneys who represented prisoners, if possible, it may be to the advantage of the prisoner to obtain the help of an attorney. This is not easy with for various reasons. If the suit has substantial merit, though, an attorney may be willing to take the suit if he or she feels it is winnable.

## WHERE TO FILE:

California prisoners will file in one of the following courts:

Eastern District of CA: 650 Capital Mall, Sacramento, CA. 95814. (When incarcerated/filing from Fresno, file at 1130, O St. Room 4203, Fresno, CA 93721). This district includes the counties of Alpine, Amador, Butte, Calaveras, Colusa, El Dorado, Fresno, Glenn, Inyo, Kern, Kings, Lassen, Madera, Mariposa, Merced, Modoc, Mono, Nevada, Placer, Plumas, Sacramento, San Joaquin, Shasta, Sierra, Siskiyou, Solano, Stanislaus, Tehama, Trinity, Tulare, Tuolumne, Yolo and Yuba.

Northern District of CA: 450 Golden Gate Ave., San Francisco, CA 94102. This district includes the counties of Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma U.S. Courthouse, 450 Golden Gate Ave., San Francisco, CA. and (3) Central District of Calif.: U.S. Courthouse, Los Angeles, CA, 90012.

Central District of CA: 312 N. Spring St., Los Angeles, CA. 90012-4793. This district includes the counties of Los Angeles, Orange, Riverside, San Bernardino, San Luis Obispo, Santa Barbara and Ventura.

Southern District of CA: 940 Front St., San Diego, CA 92189. This district includes Imperial and San Diego Counties.

Prisoners from states other than California will be able to obtain the address of the U.S. Court in which he or she must file, from the U.S. Congress, Washington, D.C. A quick check in the library may produce the necessary address. The District Court, upon request, will provide all the information regarding Local Rules, filing, service of complaint, the number of copies required by the court, etc. may differ from that of California.

## PLAINTIFF'S RIGHT TO FILE AND COMMUNICATE WITH COURTS, LAWYERS AND MEDIA:

Prison staff are prohibited from confiscating, reading, censoring, or in any way delaying a prisoner's legal papers, or otherwise interfering with any communication between the prisoner and a court. No communication needs the approval of a prison representative. Many court decisions have been handed down on this subject, but some of the older ones include:

Ex Parte Hull, 312 U.S. 546, 549 (1941)

Sigafus v. Brown, 416 F.2d 105, 107 (7th Cir. 1969)

Smartt v. Avery, 370 F.2d 788, 790 (6th Cir. 1967)

DeWitt v. Pail, 366 F.2d 682, 685 (9th Cir. 1966)

McCloskey v. Maryland, 366 F.2d 72, 74 (4th Cir. 1964)

Section 2600 of the California Penal Code entitles a prisoner to correspond confidentially with the courts, lawyers and public officials. The California Supreme Court has held that this law prohibits prison officials from reading, censoring or otherwise



j.    That visiting conditions be established which assure decency, comfort, privacy of conversation, conjugal rights, and visiting periods of adequate duration and frequency, and that prisoners' visitors not be required to wait intolerable lengths of time before visits occur.

k.    That no limitations be placed on persons an inmate may see, communicate with and receive communications from;

l.    That inmates be assured of reliable access to telephones to make outgoing calls and to receive incoming calls, and that such phones not be wiretapped or monitored in any manner.

m.    That a reasonable set of rules regarding intra-jail behavior and inmates rights be promulgated in English and Spanish and provided for each prisoner upon entry to the Jail and posted prominently throughout the Jail;

n.    That no discipline or re-classification of an inmate occur without first affording him notice, the right to confrontation of accusers, the right to cross-examine adverse witnesses, the right to present evidence and testimony, and a written decision containing reasons therefore and evidence relied upon, and hearing before an impartial tribunal;

o.    That prisoners be protected from unprovoked assaults by Jail officers;

p.    That plaintiffs be assured of adequate opportunity to bathe every day;

q.    That all prisoners, including the indigent, have reasonable opportunity to obtain life necessities and amenities;

r.    That prisoners have the opportunity to privately and confidentially communicate with their attorneys in a room provided by defendants for that purpose;

s.    That prisoners be allowed to retain in reasonable quantities their personal belongings, including but not limited to, correspondence and photographs, and not be subjected to unlawful searches and seizures thereof;

t.    That Jail living conditions be humanized and provided with reasonable furnishings and windows to the outside world;

u.    That prisoners be afforded an adequate, nutritious, and wholesome diet, including eggs, milk and fresh fruit and vegetables in compliance with California Administrative Code, Title 15;

v.    That mentally disturbed inmates be provided adequate psychiatric care, and not be housed with non-disturbed inmates;

w.    That the use of the "cold tank" as a means of control and discipline be forbidden;

x.    That blanket punishments of groups of prisoners for the wrongdoing of one be forbidden;

y.    That all prisoners eligible be afforded an opportunity to register to vote, be informed, and to vote, either directly or by absentee ballot;

z.    That all prisoners of all faiths be afforded an opportunity to practice their chosen faith, including be allowed access to religious literature, visits from religious leaders, church services and a diet conforming to church dogma;

a1.    That defendants be ordered to conform their classification plan and practice to the requirements of California law;

b1.    That defendants be ordered to bring all newly accused persons before a magistrate within two days within the meaning of Penal Code §825;

c1.    That defendant California Board of Corrections be ordered to use its powers pursuant to Penal Code §6029.1 to withhold funds from the County Jail Expenditure Fund to compel the County of _Butte_ to develop and implement alternatives to incarceration.

 Page 11

plaintiffs are perpetrated by jail employees, acting under the supervision and control of the jail administration. Those allegations reaching to the California Board of Corrections specify those defendants. (See Complaint, paragraphs 47 & 48.)

The defendants misstate the law regarding the liability and accountability of supervising personnel. Under 42 U.S.C. 1983, supervising personnel can be held liable, and therefore accountable, for the behavior of their subordinates on several different grounds, and no allegation or proof of a "direct causal connection between the supervisorial acts or policies and the alleged wrongdoing" is required. (Defendants' Motion to Dismiss, p. 8, lines 1-2.)

If a supervisor is present on the scene of an unlawful act by his or her subordinate, or directs in some manner the act in question, he or she is subject to liability. Maclin v. Paulson, 627 F.2d 83 (7th Cir., 1980) Dellums v. Powell, 566 F.2d 216 (D.C. Cir. 1977).

Acquiescence in the known acts of subordinates is a sufficient basis for a finding of supervisorial liability. Alvarez v. Wilson, 431 F.Supp. 136, 146 (N.D. Ill. 1977); Downs v. Department of Public Welfare, 368 F.Supp. 454, 464 (E.D. Pa. 1973).

A failure to adequate train subordinate officers in necessary skills has been held by some courts to be a sufficient basis for a finding of liability. Dewell v. Lawson, 489 4.2d 877 (10th Cir. 1974); Owens v. Haas, 601 F.2d 1242 (2nd Cir. 1979).

A failure to adequately supervise the conduct of subordinates has also been a successful basis for a finding of supervisorial liability. Opriano v. Johnson, 632 F.2d 1096 (4th Cir. 1980); Davis v. Jahradnick, 600 F.2d 458, 459, n.1 (4th Cir. 1979). In fact, knowledge of a pattern or practice of unconstitutional violations or conditions, or the existence of facts which create the potential for violations, may subject a supervisor to liability for failure to correct the situation. Holland v. Conners, 491 F.2d 539 (5th Cir. 1974).

Liability against a supervisor may also be based upon a violation of a statutory duty by him or her which caused or made possible the violation of plaintiffs' constitutional rights. Whirl v. Kern, 407 F.2d 781, 795 (5th Cir. 1969); Johnson v. Duffy, 588 F.2d 740 (9th Cir. 1978).

For the above reasons, and given the above body of law, plaintiffs assert their allegations are more than sufficiently specific to alert the defendants as to the nature of their grievances.

IV

PLAINTIFFS' CLASS ACTION ALLEGATIONS
SHOULD BE TESTED AT THE TIME OF HEARING
ON PLAINTIFFS' MOTION FOR CERTIFICATION
OF THE CLASS

It is plaintiffs' burden to demonstrate to the court that the requirements of Rule 23 of the Federal Rules of Civil Procedure and Local Rule 124 have been satisfied, and that certification as a class action is appropriate. Peterson v. Oklahoma City Housing Authority, 545 F. 2d 1270 (C.A. 10 Okla. 1976). Plaintiffs should, and will, attempt to meet that burden by noticing a motion for certification, at which time the defendants should more appropriately make their objections to class certification.

V.

PLAINTIFFS' CLASS ACTION ALLEGATIONS
ARE SUFFICIENTLY SPECIFIC TO SERVE
THE OBJECTIVES OF RULE 23 AND LOCAL
RULE 124

## PLAINTIFFS' ALLEGATIONS ARE
## SUFFICIENTLY SPECIFIC, AND
## PLAINTIFFS DO NOT LACK STANDING

The defendants argue, in their Motion to Dismiss, that plaintiffs' allegations lack specificity to a fatal degree, and cite in support of this contention O'Shea v. Littleton (not "Litton" as in defendants' motion), 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed. 2d 674 (1974), a case the defense asserts is "directly on point."

Plaintiffs would counter that the difference between the O'Shea case and this case are more significant than any superficial similarities. In O'Shea plaintiffs brought suit alleging the county government and judiciary had engaged in a pattern and practice of racial discrimination in the treatment of criminal defendants. Plaintiffs did not allege they were individually or collectively the victims of the discriminatory pattern they described, nor did they allege the existence of pending criminal matters wherein they might, individually or collectively, suffer any future harm. It appears that, in the O'Shea matter, plaintiffs constituted an organization battling for the civil rights of unnamed, non-party persons, although this is not made clear in the court's opinion. The court held plaintiffs failed to satisfy the case or controversy requirement of Article III of the U.S. Constitution, and lacked standing to sue.

Quite distinct is the case before the court. All of the named plaintiffs have alleged they are currently incarcerated in the _____ County Jail, Central Facility, and suffer from the pattern of unlawful conduct perpetrated upon them by the defendants.

In another case cited by the defendants, National Indian Youth Council v. Morton, 363 F.Supp. 475 (1973), the plaintiffs lacked standing to sue, according to the sound reasoning of the court, because they simply were not the persons aggrieved by a school policy which expelled certain (non-plaintiff) Indian students. The defendants misstate the holding of the court in National Indian Youth Council v. Morton, which simply has no bearing on the case now pending before this court.

### III

## PLAINTIFFS' ALLEGATIONS AGAINST
## INDIVIDUAL DEFENDANTS ARE
## SUFFICIENTLY SPECIFIC

Plaintiffs have framed their allegations against the defendants in general terms for reasons which make such a format unavoidable: plaintiffs have described their grievances in terms of a pattern of unlawful conduct, engaged in by all of the named defendants, and plaintiffs are unaware of the formal and informal hierarchy within the jail administration, and therefore do not know who is directly responsible for the pattern of conduct of which they complain. Whenever possible, see for example paragraph 34 of the Complaint, plaintiffs have specified the defendants who are responsible for the pattern of unlawful conduct of which they complain.

To demonstrate their mastery of the obvious, plaintiffs would note they have not requested money damages as a form of relief; they have requested an exercise of this court's injunctive powers. If plaintiffs had not named as defendants those persons able to exercise control over the conduct of those who carry out the policies of which plaintiffs complain, this suit would be doomed by its own limited scope.

The named defendants in this suit fall into three categories: jail employees (guards and medical personnel), supervisors (jail administration and members of the _____ County Board of Supervisors), and the California Board of Corrections. The acts complained of by


Page 13

1  Edgar Lee WARREN
2  35 County center DR.
3  Oroville, Ca 95965
4
5  Edgar Lee WARREN, Phone number(530)895-0186
6  home Address 1145 W 2nd street #3
7  CIty CHICO, COUNTY OF Butte
8  STaTe OF California
9  Zip code 95926
10
11  Napa State Hosptial
12  2100 Napa-Vallejo Highway
13  Napa, Ca 94558-6293#
14  Public(707)253-5000
15  TDD(707)253-5768
16  Fax (707)253-5513
17
18  Diana WARREN, Phone number(661)633-1262 daughter
19  1508 MONtEREY APt14
20  BAKERSFeild, Ca 93305
21
22  KamEShia WARREN daughter
23  Don't Know Addess she is in
24  EasT PALO ALTO CaliFoRNia.
25
26  however Edgar Lee WARRYN is waite To go
27  To Napa State Hospital so iF WARREN is not
28  here that where WARREN Will be anf go oN

Page 14

I declare under penalty perjury that
Foregoing is true and correct.

Signed this 16 = day of June  2008

Edgare Lee Warren

(Plaintiff's signature)

Page 15

**KENT R. CARUSO, Ph.D.**
**Clinical-Forensic Psychologist**
**License No. PSY 4477**

DOCUMENTS

P. O. Box 994445
Redding, CA 96099-4445
(530) 241-2088

February 4, 2008

The Honorable Gerald Hermansen
Butte County Superior Court
Butte County Courthouse
One County Center Drive
Oroville, California 95965

FILED
Butte County
Superior Court
FEB 03 2008
Sharol Strickland Clerk
By E. DENARLiU Deputy

In the matter of The People vs. Edgar Lee Warren, defendant
Court Case #: CM027429
A CPC Section 1368/1370 et seq Psychological Evaluation

Dear Judge Hermansen:

Pursuant to an appointment by the court I recently completed a psychological
examination on Mr. Edgar Lee Warren for the purpose of addressing issues relating to
this man's current levels of intellectual/mental, social, and general psychological
functioning, particularly as knowledge of and database in these things may assist me in
determining whether or not Mr. Warren is competent to stand trial. The CPC Section
1368/1370 et seq Competency Test is two pronged and involves the questions of whether
or not Mr. Warren is aware of and understands the nature and consequences of the
proceedings currently pending against him; and whether or not he is capable of assisting
his attorney in a rational manner during the conduct of Mr. Warren's defense.

This assessment of Mr. Warren was conducted in one of the Interview Rooms on the C
Unit of the Butte County Jail on the morning and into the afternoon of February 4, 2008.
Prior to my meeting with Mr. Warren I thoroughly reviewed the packet of information
that had been forwarded to me by the Criminal Clerk's Office of the Butte County
Superior Court. I spent almost 1 hour and 45 minutes with this man, and during that time
conducted structured clinical interview and administered to him an abbreviated form of
the Verbal part of the Wechsler Adult Intelligence Scale – Revised, the Bender Visual-
Motor Gestalt Test, the Wechsler Memory Scale, and part of the Projective Story Telling
Cards.



The Honorable Gerald Hermansen
Butte County Superior Court
In the matter of The People vs. Edgar Lee Warren, defendant
A CPC Section 1368/1370 et seq Psychological Evaluation
Page: -2-

Mr. Warren was made available to see me very shortly after my arrival on the C Unit. He
was dressed in typical Jail attire, free from any restraints, and presented with adequate
grooming and hygiene. Mr. Warren seemed to be in good physical health and there were
no observable outstanding physical characteristics. Mr. Warren is a 51 year old mixed
racial, Afro-American and Native American male of approximately average height and
weight and appearing to be his stated age.

Mr. Warren indicated to me that he had no memory of seeing any other mental health
professional recently and/or pertaining to his commitment offenses. He had no idea, he
stated, what a 1368/1370 Evaluation is about; but later on in the interview he reported
some fairly recent history that would strongly suggest his having had a prior 1368/1370 et
seq Psychological Evaluation out of Los Angeles County, and resulting in placement at
Patton State Hospital.

Mr. Warren was quick to point out to me that he is mentally retarded and wholly
illiterate. He added that the only thing that he can write, having been taught by one of his
sisters, is his own name. At the same time Mr. Warren always seemed to be relaxed and
comfortable with myself and the assessment procedures. He was affable and easy to
approach, cooperative, focused, serious, and task oriented.

Mr. Warren's eye contact was good and his affect stable and appropriate though
somewhat blunted. He was alert and oriented to person and place but not oriented to
time. Ego strength appeared to be intact and reality testing was functional. During the
time that I spent with Mr. Warren he did not exhibit any significant propensities toward
either the cognitive or perceptual distortion of reality; although at times some of his
thinking was mildly paranoid, and he reported to me a history of auditory hallucinations.

For the most part Mr. Warren's thinking was clear and lucid though his expressive and
receptive language skills were poor. Other than that which was consistent with his
mental retardation there were no oddities or peculiarities in communicational or
relationship style or demeanor. And while there were definite signs of mild to moderate
organic brain syndrome, some mild elements of logical deficit and poverty of content, no
psychotic signs or symptoms were noted. There was no illusional or delusional thinking
outside that which I already alluded to in terms of his being a bit paranoid at times.
There was no circumstantial or tangential thinking, confused or disoriented thinking, or
fragmented or disorganized thinking.

DOCUMENTS

The Honorable Gerald Hermansen
Butte County Superior Court
In the matter of The People vs. Edgar Lee Warren, defendant
A CPC Section 1368/1370 et seq Psychological Evaluation
Page: -3-

A brief neurological examination revealed a 51 year old consistently left side dominant male who was fully mobile and ambulatory while being observed moving about the small Interview Room and its adjacent Jail corridor. There were no signs of significant impairment in Mr. Warren's gross motoric control, coordination, balance, or dexterity; however his poor reproductions and the very immature overall quality of his Bender Visual-Motor Gestalt drawings were consistent with moderate brain damage. On the other hand Mr. Warren's freedom from distractibility was good; and there were no signs of hyperactivity, psychomotor agitation, or any inability on his part to be able to control motoric impulses. There were a number of indices pointing toward the significant impairments in visual and auditory perceptual/sensory processing abilities. Mr. Warren also indicated to me that he requires glasses, not for close up work, but to be able to see clearly that which is going on around him. He stated for example that most things within the Courtroom appeared to him to be blurred.

Mr. Warren also performed rather poorly across the Wechsler Memory Scale. During this test he indicated to me that he does not know his alphabet, his basic math skills are probably no better than those of a first or second grader; and civically, culturally, and socially, he has no knowledge about the world outside his immediate reach. He exhibited significant problems in the areas of Mental Control, Logical Memory, Associative Learning, and Short Term Auditory Memory. These results, once again, were quite consistent with his described history of being developmentally delayed, and a client of various developmental disabilities services.

Results obtained from this administration of an abbreviated form of the Verbal part of the Wechsler Adult Intelligence Scale – Revised to Mr. Warren were no better. These scores placed him in the mildly mentally retarded range of Verbal Intelligence. Mr. Warren was, not surprisingly, not at all comfortable with his own mental faculties. His basic anticipatory, planning, input integration, and organizational skills proved to be quite immature.

Overall intellectual test results and mental status definitely pointed in the direction of significant right and left hemisphere brain damage, neurological dysfunction, or learning disabilities; that in Mr. Warren's case were described as being chronic, and possibly related to substance abuse on his mother's part, possible failure to thrive, and maybe even repeated beatings to the head at the hands of his mother when Mr. Warren was very young.

Documents

The Honorable Gerald Hermansen
Butte County Superior Court
In the matter of The People vs. Edgar Lee Warren, defendant
A CPC Section 1368/1370 et seq Psychological Evaluation
Page: -4-

Mr. Warren's word knowledge and vocabulary skills present as being early to no better than mid elementary school level. The same could essentially be said about his general reasoning and logical thinking abilities, his capacity to manipulate abstractions, ability to make good judgment and common sense decisions, and conceptual thinking. I did not find him at all comfortable having to deal with any kind of novel or complex cognitive matter; his analytical and critical thinking abilities being very child like.

With enough questioning Mr. Warren was finally able to provide the following history about himself. He did not remember his birthday or his exact age, but stated that he was born in Oroville, his mother left the relationship with his father while she was pregnant with Mr. Warren, and that he already had an older sister from the relationship between his biological parents. He further stated that he was told that his maternal grandmother was Native American and raised on one of the Tribal Reservations in this area.

According to Mr. Warren there was never a father figure in the home, and that he did have two sisters and three brothers. He spent the first nine years of his life living in Chico, and then his mother took the family to the downtown Los Angeles Area. Mr. Warren described his mother as being a very physically punitive and abusive individual when it came to his upbringing. She seemed never to like him or to want to have much to do with him. She was never as abusive to Mr. Warren's other siblings. By the time that Mr. Warren was 10 or 11 years of age he was apparently getting into enough trouble, and he had already been diagnosed as being mentally retarded, to result in the first of his many foster home placements. By the time he was 15 years of age and until he was in his late teens he was placed at Three Pines a home for the developmentally disabled in the Lancaster-Palmdale Area of LA County.

By way of Mr. Warren's descriptions he was, over the years, a client of Inland Counties Developmental Disability Services, the Regional Agency that handles at least the coastal county of Los Angeles; and Far Northern Regional Center which currently handles his case. He stated that he attended special education classrooms from the time that he could remember, he used to have a "yellow bus" pick him up at the house and take him to school; and he dropped out of school in or after the 6th grade because he was continually being laughed at. At that point, according to Mr. Warren, the School District had attempted to main stream him.

Mr. Warren told me that he has always been on SSI, and always had a payee. He has never once been in or attempted to be involved in the work force. There have been a

*DOCUMENT'S*

The Honorable Gerald Hermansen
Butte County Superior Court
In the matter of The People vs. Edgar Lee Warren, defendant
A CPC Section 1368/1370 et seq Psychological Evaluation
Page: -5-

number of women involved in his life, one short term marriage; and that woman as well as another one, both described by Mr. Warren as being prostitutes, gave birth to Mr. Warren's two daughters. Mr. Warren was residing with one of these daughters, and his grandson, down in Bakersfield before eventually returning to Butte County.

Mr. Warren apparently also has a fairly significant criminal history. He has been in and out of different County Jails, and he has been to prison at least once. He also has a significant history of interventions with mental health professionals. These occurred in Los Angeles County, while incarcerated with CDRC, and through the POC, Parole Outpatient Clinic System, once Mr. Warren had been discharged to parole. As I mentioned before, eventually he ended up at Patton State Hospital and probably as the result of a PC1368/1370 Evaluation. Mr. Warren informed me that he has generally been placed on antipsychotic drugs; and he named Thorazine, Haldol, and Seroquel.

When it came to talking about some of the specifics pertaining to the pending proceedings and operation of the Courtroom and trial processes Mr. Warren exhibited almost unusual amounts of ignorance. This is especially in lieu of the fact that, in all probability, he spent some time down at Patton State Hospital learning about these things. In fact when I confronted him about some of his experiences there he replied that the doctors spent a lot of time trying to teach him things that he could never remember. Thus when asked about the roles of his Attorney, the Jury, the Prosecution, and the Judge, all Mr. Warren repeatedly told me was, "I don't know...I don't remember." He responded likewise when asked about felonies and misdemeanors, the differences between the two, and plea bargains. When asked how he might assist his Attorney he indicated to me that he really had no idea; but at the same time Mr. Warren informed me that he did not do anything wrong, he was not involved in the theft of any metal objects, he was only out "scrapping" with his cousin, that it was her truck and that she was driving, and he innocently assumed that everything they were doing was legitimate.

Mr. Warren was further able to tell me that he has "three charges" pending against him; "burglary...robbery...petty theft..." At one point in the interview process Mr. Warren insisted that he had no idea why he was in Jail; while at a completely other point in the interview he stated that he is being charged with helping his cousin to steal "three pieces of rusty steel lying on the side of the road by a garbage can." A little bit later he went on to state, "I was charged for stuff in her truck...I didn't know nothing about it." Then he added that, "first I was charged with petty theft, with a misdemeanor, then it was with a felony."

The Honorable Gerald Hermansen
Butte County Superior Court
In the matter of The People vs. Edgar Lee Warren, defendant
A CPC Section 1368/1370 et seq Psychological Evaluation
Page: -6-



Mr. Warren had no difficulty talking to me about his concerns about possible sentencing options, realizing what a serious situation he was in, and stating that if "I might go back to prison again...I can plead guilty to seven years or I would get 25 to life...the last time I was in prison they treated me real mean...I was raped..."

There were enough statements made by Mr. Warren during the length of my interview with him that would indicate all criteria necessary for the first prong of the PC 1368/1370 Competency Test have been met.   Mr. Warren possesses a basic knowledge about the pending charges, he recognizes how serious his situation is and what some of the potential sentencing options are; and simply by way of the number of times that he has been to Court he possesses at least a rudimentary knowledge about how the pending proceedings are going to work.

There are no questions in this examiner's mind but that Mr. Warren is mildly mentally retarded, and may very well have at least some mild history of experiencing various psychotic symptom sequalae, primarily by way of auditory hallucinations. In the past he has been treated more or less successfully through the application of neuroleptic agents such as Thorazine, Haldol, and more recently Seroquel. The fact that he also may have a significant and chronic polysubstance abuse problem, as stated to me by different jail staff, have not all helped Mr. Warren's different problematic conditions.   In fact substance abuse may have contributed to or exacerbated symptoms such as auditory hallucinations.

I spent one hour and forty five minutes with Mr. Warren. During that time he was very adequately focused, cooperative, and attentive.   His affect was always stable and appropriate, coordination of impulses was good, and reality testing was functional. He seemed to be trying his best to work with me in a diligent, pragmatic, and productive fashion; and in so doing Mr. Warren exhibited the kinds and quality of functional encoding and decoding skills that basically allowed for adequately effective communication to occur between the two of us.

Although Mr. Warren stated that he did not know what his Attorney is supposed to do, he otherwise did indicate, throughout the interview process, that he was aware that his attorney is his advocate, and someone working in his behalf. He also made a couple of comments that tended to suggest that he is aware that the Judge is a very important person in the trial process, with say over what ultimately might happen to Mr. Warren. Mr. Warren definitely exhibited adequate levels of self-protection and concern about what is going to happen to him; and within the context of the realization that he might be

The Honorable Gerald Hermansen
Butte County Superior Court
In the matter of The People vs. Edgar Lee Warren, defendant
A CPC Section 1368/1370 et seq Psychological Evaluation
Page: -7-



sent back to prison because of what he and his cousin were doing together on July 23rd of last year. Toward the end of my meeting with Mr. Warren he even made the statement to me, "My cousin bailed out of jail...bailed out on me..."

In this examiner's opinion criteria for the second prong of the CPC 1368/1370 et seq Competency Test have also been met. Mr. Warren possesses the basic psychological and mental resources that will allow him to work with his attorney in a rational manner during the conduct of his defense.

Therefore it is this examiner's opinion that Mr. Warren is competent to stand trial at this time. If the court has any further questions or need of input please feel free to contact my office.

Sincerely,

KENT R. CARUSO, Ph.D.
Clinical-Forensic Psychologist
License No.: PSY 4477

KRC/cep

FROM: ARTHUR LEE WARREN
25 COUNTY CENTER DR.
OROVILLE CA 95965

BUTTE COUNTY JAIL INMATE

CONFIDENTIAL
LEGAL MAIL
(Federal Suit)
FEDERAL COURT

OFFICE OF THE CLERK U.S.
DISTRICT COURT NORTHERN
DISTRICT OF CALIFORNIA
450 GOLDEN GATE AVENUE
SAN FRANCISCO CALIFORNIA
3/4/02

RECEIVED

JUN 1 8 2008